IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LORAINE BARLOW-ALBALODEJO          :     CIVIL ACTION
                                   :
              v.                   :     NO. 2:02-cv-04815-BMS
                                   :
TOWN MOTORS OF EXTON, INC.         :


**DEFENDANT, TOWN MOTORS OF EXTON, INC.'S
OMNIBUS MOTION IN LIMINE TO EXCLUDE, OR, IN THE ALTERNATIVE,
LIMIT PLAINTIFF'S EVIDENCE AND TESTIMONY**

## I.    BACKGROUND

Defendant, Town Motors of Exton, Inc. (hereinafter "Town Motors") moves in limine to preclude, or, in some cases, at least limit, the evidence which plaintiff may present at trial, summarized below.

Plaintiff is expected to claim that she sustained significant, permanent and disabling injuries as a result of the subject accident on July 26, 2000.  The subject accident can be described as a rear-end collision when a vehicle operated by an employee of Town Motors struck plaintiff's vehicle in the rear. Plaintiff's vehicle sustained very minor damage.   Plaintiff moved forward and back in her driver's seat, according to her testimony, but neither her head nor her upper body came in contact with the interior of the vehicle.

To the extent that plaintiff sustained any injuries in the accident, the injuries were fairly well defined and principally confined to her neck and shoulder areas.  Ultimately, plaintiff claims to have undergone a laminectomy at C5-6 as a result of the accident.  Fortunately, the surgery was successful

and plaintiff had a good result, according to her neurosurgeon,

Andrew Freese, M.D.

Discovery has revealed that plaintiff had significant

medical conditions about her head, face and neck as a result of

many pre-accident incidents.    These include, but are not limited

to:

1.    A motor vehicle accident when she was 12 years old when
      she was hit by a speeding car as a pedestrian, in which
      she hit her head and was unconscious;

2.    Numerous  incidents  of  domestic  abuse  by  her  former
      husband and her former "common law" husband, including
      reported and unreported incidents of hitting about the
      head, face and neck.

3.    One particular instance of domestic abuse from November
      2001, in which one month after her surgical procedure,
      her whole body felt numb and tingly.

At  the  trial  of  this  case,  it  is  expected  that  the

plaintiff will attempt to introduce evidence which purports to

casually  related  plaintiff's  alleged  conditions,  including

cervical injuries, "brain injuries" and disability to the motor

vehicle accident.

## II.   STATEMENT OF THE LAW

A motion in limine is a procedure for obtaining a ruling on

the  admissibility  of  evidence  prior  to  or  during  trial,  but

before  the  evidence  has  been  offered.    Meridan  Oil  and  Gas

Enterprises Inc. v. Penn Central Corp., 614 A.2d 246, 250 (Pa.

Super.  1992),  *alloc.  denied*,  627  A.2d  180  (Pa.  1993).    The

purpose  of  a  motion  in  limine  is  twofold:  (1)  to  provide  the

trial court with a pretrial opportunity to weigh carefully and

consider potentially prejudicial and harmful evidence; and (2) to

preclude evidence from ever reaching a jury that may prove to be

so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error could occur at trial which would force the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion.   Commonwealth v. Noll, 662 A.2d 1123, 1125 (Pa. Super. 1995), *alloc. denied*, 673 A.2d 333 (Pa. 1996).

A motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990).   It is a recognized method for obtaining a pretrial order for simplifying issues for trial, including the exclusion of irrelevant evidence on the grounds that it is offered to prove a legally deficient claim.   Such a motion enables a court to rule in advance of trial on the admissibility of proposed documentary or testimonial evidence, so as to expedite the subsequent trial and make it more efficient.   White Mountain Apache Tribe of Arizona v. United States, 10 Cl.Ct. 115 (1986);   Inslaw, Inc. v. United States, 35 Fed.Cl. 295 (1996).

While the Federal Rules of Evidence do not explicitly discuss in limine rulings, the court may make such rulings pursuant to its inherent authority to manage the course of trials.   Sun Company, Inc. v. Carboline Company, 1992 U.S. Dist. LEXIS 16661 (E.D. Pa. 1992).   The decision on a motion in limine is discretionary with the court.   Id.

**III. ITEMIZATON OF EVIDENCE TO BE PRECLUDED OR LIMITED**

Town Motors objects to a significant portion of plaintiff's proposed evidence as more particularly set forth hereinafter:

1. Any evidence of "brain damage," "cognitive deficits," or "emotional disturbance."

   (a)  In plaintiff's complaint, plaintiff did not plead any head conditions or "brain damage," "cognitive deficits" or the like.

   (b)  Plaintiff has never moved to amend her complaint to assert such claims.

2. Plaintiff, through counsel, has acknowledged that she isn't claiming brain damage.  Rather, plaintiff has a "physical injury," i.e., her neck conditions.

3. There is no expert evidence connecting any "brain injury" or "cognitive deficits" with the subject accident (see Dr. Massari below).

4. Without expert medical testimony ascribing brain injury or cognitive deficits to the subject incident, any other testimony or evidence from any other sources is irrelevant, immaterial and prejudicial.

5. Plaintiff's head did not hit anything in the accident. See N.T. plaintiff's deposition, April 29, 2003 at p. 80.

6. Plaintiff's head did not hit the windshield in the accident.  See N.T. plaintiff's deposition, April 29, 2003, pp. 80-81.

7. Plaintiff's head did not hit the steering wheel in the accident.  See N.T. plaintiff's deposition, April 29, 2003, pp. 80-81.

8. No other part of plaintiff's body came in contact with any other part of the interior of the care.  See N.T. plaintiff's deposition, April 29, 2003 at p. 81.

9. Town Motors incorporates by reference all of its arguments regarding the exclusion and/or limitation of evidence from or by David J. Massari, Ph.D., set forth below.

**1.    Thomas P. Lacek, P.E., Plaintiff's Liability Expert**

   1.    The original deadline for plaintiff's identification and submission of expert reports was April 7, 2003.

   2.    On June 5, 2003, plaintiff produced the June 2, 2003 report Thomas P. Lacek, P.E.

   3.    Mr. Lacek conclusions and expresses opinions on topics

that are irrelevant to the instant action.

   4.    Mr. Lacek also reaches opinions on topics that are not within the scope of mechanical engineering expertise.

   5.    Mr. Lacek's curriculum vitae reveals that he has no expertise outside the field of mechanical engineering.

   6.    Mr. Lacek's opinions about "causation" are clearly beyond his scope of his expertise.

   7.    Mr. Lacek is not qualified to testify about any of plaintiff's physical or medical conditions.

   8.    To permit Lacek to testify about the foregoing would severely and unfairly prejudice defendant.

**2.    Basil Jawad, M.D., Plaintiff's Personal Physician**

   1.    Dr. Jawad never authored an expert report.

   2.    Dr. Jawad never provided his curriculum vitae.

   3.    Never been provided with interrogatory answers circumscribing the nature and scope of Dr. Jawad's proposed "expert testimony."

   4.    Although Dr. Jawad provided some medical care post-accident, he never opined that plaintiff's symptoms or

conditions were causally related to the motor vehicle accident.

5.    He was not identified as an expert until May 9, 2003, after plaintiff's initial expert deadline.

**3.    Marc Cohen, D.C., Consulting Chiropractor**

1.    Dr. Cohen is a chiropractor.

2.    Dr.Cohen is not a medical doctor.

3.    Dr.  Cohen is not licensed to practice medicine.

4.    Dr. Cohen is not qualified to offer any opinions within

any degree of "medical certainty."

5.    Dr. Cohen is not qualified to offer any opinions regarding causation.

6.    Dr. Cohen did not perform a functional capacity evaluation.

7.    Dr. Cohen is not qualified to opine about a functional capacity evaluation he did not perform.

8.    Dr. Cohen is not qualified to render an opinion about disability.

9.    Dr. Cohen's findings, conclusions and opinions from his report of April 11, 2003 should be excluded in their entirety because the report was not provided until after plaintiff's initial expert deadline.

10.    Dr. Cohen's April 11, 2003 report is not based on any new documents, records, writings or information.

11.    Dr. Cohen's April 11, 2003 report is not based on any follow-up examination of plaintiff.

12.   Dr.   Cohen's   April   11,2003   report   discusses "employability," about which Dr. Cohen is not qualified to render an opinion.

**4.   Wendy Wang, D.P.T., Consulting Physical Therapist**

1.   Wendy Wang is a physical therapist.

2.   Wendy Wang is not licensed to practice medicine.

3.   Wendy Wang is not qualified to render any medical opinions.

4.   Wendy Wang was not identified as an "expert" until May 5, 2003, after plaintiff's initial expert deadline.

5.   Wendy Wang is not qualified to offer any opinions about causation.

6.   Wendy Wang is not qualified to offer any opinions about disability.

7.   Wendy Wang is not qualified to offer any opinions about permanency.

8.   Wendy Wang is not qualified to offer any opinions about employability.

**5.   Nelson Kohl, M.D., Plaintiff's Personal Physician Since August 2002**

1.   Have never been provided with Dr. Kohl's curriculum vitae.

2.   Dr. Kohl never wrote a report.

3.   Dr. Kohl was not identified as an "expert" until May 9, 2003, after plaintiff's initial expert deadline.

4.   Dr. Kohl has never reviewed any records or films of plaintiff's medical care prior to August 2002.

5.    Plaintiff has never provided answers to interrogatories in which Dr. Kohl's expert testimony is described or circumscribed.

6.    Dr. Kohl is not qualified to render an opinion about causation.

**6.    Pierre LeRoy, M.D., Plaintiff's Neurologist**

1.    Was not identified as an expert until May 9, 2003 after plaintiff's initial expert deadline.

2.    As of May 9, 2003, had written a single report dated March 21, 2001.

3.    Dr. LeRoy had not performed a records or films review as of March 21, 2001.

4.    Dr. LeRoy did not state any connection, let alone a causal connection, between his findings from the March 21, 2001 consultation and the subject accident, and any such "causal" testimony  should be precluded.

5.    Dr. LeRoy's findings, conclusions and opinions contained in his June 10, 2003 reports should be precluded because they were after the plaintiff's original expert deadline and there has been no explanation why the findings, conclusions and opinions contained in those reports were not provided earlier.

6.    Dr. LeRoy's June 10, 2003 reports reflect his review of additional medical records, all of which existed at the time of his March 21, 2001 report and either were or could have been evaluated and included in his reports prior to the expert deadlines.

7.    Dr. LeRoy did not conduct any studies to establish any "cognitive impairment," although he uses the phrase in his June 10, 2003 report.

8.    Dr LeRoy acknowledges that he did not conduct any neuropsychological or psychometric testing.

9.    Dr. LeRoy is not qualified to render opinions about "employability."

10.    Dr. LeRoy's June 10, 2003 reports do not state any causal connection between certain of his findings and the motor vehicle accident.

11.    Any opinions by Dr. LeRoy must be restricted to the neck.

12.    On July 3, 2003, Dr. LeRoy provided a report opining about future "neurological monitoring" and its attendant costs. There is no reason why he could not have made any opinions about future medical care or costs in his earlier reports well within the time limits for plaintiff's expert opinions.

13.    Dr. LeRoy's opinions about household help for plaintiff contained in his July 1, 2003 report are late, not based on any new documents or information, not based on any current evaluation and having no foundation in any recently uncovered evidence.

**7.    Myuong Soo Lee, M.D., Consulting Radiologist**

1.    Dr. Lee is a radiologist and interpreted an MRI of the cervical spine on June 2, 2003.

2.    Not identified as an expert until June 3, 2003, after plaintiff's initial expert deadline.

3.    Dr. Lee has never written a report.

4.    Defendant   has   never   been   provided   with   Dr.   Lee's curriculum vitae.

5    Dr. Lee has never expressed any opinions about her June 2, 2003 findings and the subject accident.

6.    Dr.  Lee  is  not  qualified  to  render  an  opinion  about causation.

## 8.    Andrew Freese, M.D., Plaintiff's Neurosurgeon

1.    Dr. Freese authored a report dated June 9, 2003.

2.    Some  of  the  information  in  Dr.  Freese's  June  9,  2003 report is "new."  Dr. Freese had not seen plaintiff since October 2002.

3.    Dr.  Freese  has  not  reviewed  ay  additional  imaging studies.

4.    Dr.  Freese  mentions  a  report  of  a  functional  capacity evaluation performed by "Dr. Marc Cohen's office."  Dr. Freese's comments  about  Dr.  Cohen's  "opinions"  about  the  FCE  should  be precluded  for  all  the  reasons  noted  under  Dr.  Cohen  and  Wendy Wang's sections above.

5.    Dr. Freese's reliance on Dr. Cohen and his FCE are also misplaced because the FCE took place in October 2002.  There was nothing  "new"  that  was  contained  in  Dr.  Cohen's  April  11,  2003 report that was not otherwise available for Dr. Freese's review and evaluation in or around October or November 2002.

6.    Based on the foregoing, Dr. Freese is not qualified to state  that  plaintiff  is  not  "able  to  return  to  gainful employment."

7.   Any new opinions in the June 9, 2003 report were or could have been provided by Dr. Freese well in advance of the plaintiff's expert deadlines.

**9.   David J. Massari, Ph.D., Plaintiff's Neuropsychologist**

1.   Dr. Massari authored a neuropsychological report dated June 5, 2003.

2.   Dr. Massari was identified as an expert on June 6, 2003.

3.   Dr. Massari was identified as an expert after the plaintiff's initial expert deadline.

4.   Dr. Massari's testimony should be precluded in its entirety for the reasons stated above, relative to any "brain damage" or "cognitive deficits."

5.   Dr. Massari undertook no pre-morbid investigation.

6.   Dr. Massari reviewed no pre-morbid documents, records or writings regarding plaintiff's intelligence, neuropsychological functioning, or cognitive abilities.

7.   Dr. Massari did not state that any of plaintiff's purported neuro-cognitive defects were caused by the accident.

8.   Dr. Massari has failed to account for plaintiff's significant pre and post-incident domestic abuse.

**10.   Donald Jennings, Ed.D., Plaintiff's Vocational Expert**

1.   Dr. Jennings is plaintiff's vocational expert.

2.   Dr. Jennings is not licensed to practice medicine.

3.   Dr. Jennings is not qualified to offer medical opinions.

4.    Dr. Jennings is not qualified to offer opinions about employability.

5.    Dr. Jennings is not qualified to offer opinions regarding plaintiff's "pain difficulties."

6.    Dr. Jennings has authored no reports after his report of December 10, 2002 and should not be permitted to offer any findings, conclusions or opinions based on any documents, records or writings after that date.

7.    Dr. Jennings is not qualified to render any opinions about causation.

8.    Dr. Jennings is not qualified to speculate about plaintiff's future medical condition(s).

9.    Dr. Jennings is not qualified to speculate about any future disability or future vocational implications related to same.

WHEREFORE, in consideration of the foregoing defects and issues respecting certain of plaintiff's evidence, it is respectfully requested that Town Motors' motion in limine to preclude or limit plaintiff's evidence be granted in full, or, in

the alternative, in part as more specifically stated in the body

of this motion.

                              Respectfully submitted,

                              CONNOR WEBER & OBERLIES


                              _____
                              Joseph M. Oberlies, Esquire
                              Suite 1C47, The Philadelphian
                              2401 Pennsylvania Avenue
                              Philadelphia, PA    19130
                              (215) 978-2900
                              Attorneys for Defendant,
                              Town Motors of Exton, Inc.

## **CERTIFICATE OF SERVICE**

JOSEPH M. OBERLIES, ESQUIRE certifies that on August 22, 2003, he serve a true and correct copy of Defendant, Town Motors of Exton, Inc.'s Motion In Limine To Exclude, Or, In The Alternative, Limit Plaintiff's Evidence and Testimony upon counsel for plaintiff by mailing same to him via U.S. first class mail, postage prepaid, at the following address:

      J. Michael Considine, Jr., Esquire
      12 East Barnard Street - Suite 100
      West Chester, PA   19380


_____
JOSEPH M. OBERLIES, ESQUIRE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LORAINE BARLOW-ALBALODEJO   :  CIVIL ACTION
              :
    v.        :  NO. 2:02-cv-04815-BMS
              :
TOWN MOTORS OF EXTON, INC.    :

## **ORDER**

AND NOW, this    day of      , 2003, upon consideration of Defendant, Town Motors of Exton, Inc.'s Omnibus Motion in Limine to Exclude, Or, In The Alternative, Limit Plaintiff's Evidence and Testimony, and plaintiff's response thereto, it is hereby ORDERED that said motion is GRANTED as more particularly set forth by the court.

BY THE COURT:

_____
               J.